IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| HUBERT W. SAWYER, JR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) CIVIL ACTION |
| v. | ) |
| | ) No. 08-2114-KHV-DWB |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

REPORT AND RECOMMENDATION

Plaintiff seeks review of a decision of the Commissioner of
Social Security (hereinafter Commissioner) denying childhood
disability benefits and supplemental security income pursuant to
sections 216(i), 223, 1602 and 1614(a)(3)(A) of the Social
Security Act.  42 U.S.C. §§ 416(i), 423, 1381a, and
1382c(a)(3)(A)(hereinafter the Act).  Finding error in assessment
of plaintiff's mental residual functional capacity (RFC), the
court recommends remand pursuant to the fourth sentence of 42
U.S.C. § 405(g) for further proceedings.

I.   **Background**

Plaintiff applied for disabled adult child benefits and
supplemental security income on Aug. 8, 2003 alleging onset of
disability on Jun. 30, 1991.  (R. 20, 69-71, 359-60).  The claims

were denied, and a hearing was held before Administrative Law Judge (ALJ) George Bock on Mar. 2, 2006.  (R. 20, 26, 365, 378-416).  On July 28, 2006, ALJ Bock issued a decision finding plaintiff not disabled within the meaning of the Act and denying benefits.  (R. 20-25).

The ALJ found that plaintiff has never engaged in substantial gainful activity and, therefore, has no past relevant work.  He found that plaintiff has a severe combination of impairments including anti-social personality disorder exacerbated by alcohol abuse when plaintiff drinks, depressive disorder, and hypertension, but that plaintiff's impairments do not meet or medically equal the severity of an impairment in the Listing of Impairments.  (R. 21).

The ALJ found plaintiff's allegations of limitations and restrictions resulting from his impairments not credible, evaluated the medical reports and opinions of record, and assessed plaintiff with a residual functional capacity (RFC) for a wide range of medium level work.  (R. 22-23).  The ALJ determined plaintiff cannot work in extreme heat or cold, and has several mental limitations restricting the range of work of which plaintiff is capable.  (R. 23).

He found that plaintiff has no past relevant work (R. 21, 24), but that plaintiff is capable of performing jobs existing in the economy in significant numbers.  (R. 24).  Therefore, he

-2-

concluded that plaintiff is not disabled within the meaning of the Act, and denied his applications.  (R. 24, 25).  Plaintiff disagreed, and sought Appeals Council review of the decision. (R. 11-16).  Review was denied, leaving the ALJ's decision as the final decision of the Commissioner.  (R. 7-9); <u>Blea v. Barnhart</u>, 466 F.3d 903, 908 (10th Cir. 2006).  Plaintiff now seeks judicial review.

## II.  Legal Standard

The court's review is guided by the Act.  42 U.S.C. §§ 405(g), 1383(c)(3).  Section 405(g) provides, "The findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  The court must determine whether the factual findings are supported by substantial evidence in the record and whether the ALJ applied the correct legal standard. <u>Lax v. Astrue</u>, 489 F.3d 1080, 1084 (10th Cir. 2007); <u>White v. Barnhart</u>, 287 F.3d 903, 905 (10th Cir. 2001).  Substantial evidence is more than a scintilla, but less than a preponderance, and it is such evidence as a reasonable mind might accept to support a conclusion.  <u>Zoltanski v. F.A.A.</u>, 372 F.3d 1195, 1200 (10th Cir. 2004); <u>Gossett v. Bowen</u>, 862 F.2d 802, 804 (10th Cir. 1988).  The court may "neither reweigh the evidence nor substitute [it's] judgment for that of the agency."  <u>White</u>, 287 F.3d at 905 (quoting <u>Casias v. Sec'y of Health & Human Servs.</u>, 933 F.2d 799, 800 (10th Cir. 1991)); <u>Hackett v. Barnhart</u>, 395

F.3d 1168, 1172 (10th Cir. 2005).  The determination of whether substantial evidence supports the Commissioner's decision, however, is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

An individual is under a disability only if that individual can establish that he has a physical or mental impairment which prevents him from engaging in substantial gainful activity and is expected to result in death or to last for a continuous period of at least twelve months.  42 U.S.C. § 423(d).  The claimant's impairments must be of such severity that he is not only unable to perform his past relevant work, but cannot, considering his age, education, and work experience, engage in any other substantial gainful work existing in the national economy.  Id.

The Commissioner uses a five-step sequential process to evaluate whether a claimant is disabled.  20 C.F.R. § 416.920 (2006); Allen v. Barnhart, 357 F.3d 1140, 1142 (10th Cir. 2004); Ray, 865 F.2d at 224.  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988).

In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity

-4-

since the alleged onset, whether he has severe impairments, and whether the severity of his impairments meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Id. at 750-51.  If plaintiff's impairments do not meet or equal the severity of a listing, the Commissioner assesses claimant's RFC.  20 C.F.R. § 416.920.  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

After assessing claimant's RFC, the Commissioner evaluates steps four and five--whether the claimant can perform his past relevant work, and whether he is able to perform other work in the economy.  Williams, 844 F.2d at 751.  In steps one through four the burden is on claimant to prove a disability that prevents performance of past relevant work.  Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show other jobs in the national economy within plaintiff's capacity. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

Plaintiff claims the ALJ failed to properly credit the opinion of the state agency psychological consultant, failed to properly consider plaintiff's mental limitations in assessing plaintiff's RFC, and consequently erred in presenting a hypothetical question to the vocational expert.  The Commissioner argues that the ALJ properly considered the opinion of the

psychological consultant and incorporated it into the RFC
assessment, and properly relied upon the testimony of the
vocational expert in response to the hypothetical questioning.
Because all of plaintiff's allegations of error relate to the
ALJ's evaluation of plaintiff's mental impairments, the court
addresses this issue first.

**III. Evaluation of Mental Impairments**

Plaintiff notes that the psychological consultant, Dr.
Mintz, determined plaintiff's ability to deal with work stresses
and his ability to interact with supervisors was "Poor," and that
the ALJ restricted plaintiff to simple repetitive unskilled work,
no work with the general public, and occasional contact with
supervisors and coworkers. (Pl. Br. 15). Plaintiff argues, "By
implication, the ALJ assumes that these limitations would, in
effect, accommodate Sawyer's mental impairments," but that "there
is no medical evidence that supports the ALJ's finding that
Sawyer would be able to sustain an 8 hour day five days a week
with these limitations." Id. He asserts that Dr. Mintz "was
quite emphatic in stating that Sawyer's antisocial symptoms were
ingrained and that he would be poorly limited in his ability to
deal with work stress," and that the ALJ substituted his lay
opinion for that of the state agency psychologist, Kathleen King,
Ph.D. (Pl. Br. 16). In his next point of error, plaintiff
claims the ALJ failed to consider and evaluate the functional

limitations on plaintiff's RFC in accordance with Soc. Sec. Ruling (SSR) 85-15.  (Pl. Br. 17-18).

The Commissioner argues that the ALJ properly considered Dr. Mintz's opinion in assessing plaintiff's RFC.  (Comm'r Br. 7). He argues that the RFC assessed is consistent with Dr. Mintz's findings, and points to record evidence tending to support this assertion.  Id. at 7-8.

ALJ Bock found that plaintiff has mental impairments of "anti social personality disorder, exacerbated by alcohol abuse when claimant drinks and a depressive disorder, not otherwise specified." (R. 21).  He found these impairments to be part of a combination of impairments which is severe within the meaning of the Act, but that the severity of the impairments does not meet or medically equal the severity of any Listed impairment.  Id. The court quotes the relevant portions of the decision in which the ALJ evaluated plaintiff's mental impairments in their entirety:

> mental status examination at that time did reveal some
> antisocial personality symptoms with poor judgment and
> limited insight as well as claimants' [sic] sense of
> entitlement and dependency.  The examining physician
> summarized that claimant would have difficulty
> interacting well with co-workers and supervisors due to
> his history of alcohol abuse and his antisocial
> personality features with limited positive internalized
> work attitudes and a lack of patterns of positive work
> behaviors with a long history of incarceration and
> institutionalization going back to childhood with anger
> and impulsivity symptoms.  Nonetheless he was thought
> to be able to understand simple and intermediate
> instructions and his ability to concentrate appeared

-7-

intact.  He did not appear capable of handling his own
funds due to his history of drinking.  Global
assessments of functioning current and past year were
55.  Claimant was thought to have poor mental
functioning with regard to interacting with supervisors
and dealing with work stresses but all other categories
were thought to be fair or good as indicated in the
medical assessment beginning at Exhibit 9F, page 5.
[(R. 294).][1]

A state agency psychologist concluded that claimant had
no severe mental impairment in Exhibit 4F [(R. 260-73)]
and the rationale for that conclusion is set forth in
the record at Exhibit 4F, page 13. [(R. 272).]

* * *

Mentally, claimant is restricted to simple repetitive
unskilled tasks only and he can only have occasional
contact with co-workers or supervisors and cannot work
with the public.  He does have moderate social
dysfunction with moderate deficiencies of
concentration, persistence or pace.

(R. 22-23).

---

[1]The "List of Exhibits" contained in the record at (R. 5)
reflects only four pages in Exhibit 9F (R. 350-53), and the
exhibit identified consists of treatment notes from Dr. Spencer
at Pleasanton Family Practice which were "Submitted Subsequent to
the Hearing."  (R. 350).  The court notes, however that the
record contains another exhibit captioned as Exhibit 9F which is
not separately identified in the "List of Exhibits."  (R. 290-
98).  This exhibit consists of a "Mental Status Examination"
procured by the state Disability Determination Services and
prepared by Dr. Mintz, (R. 290-93), and a "Medical Assessment of
Ability to Do Work-Related Activities (Mental)" signed by Dr.
Mintz, beginning at page five of Exhibit 9F.  (R. 294-96).
The hearing transcript reveals that at the hearing the ALJ
received into evidence exhibits F, 1 through 9.  (R. 381).  Thus,
the exhibits received after the hearing (8-10F) were not
consecutively numbered with the exhibits received at the hearing.
Comparison of ALJ Bock's discussion with Exhibit 9F at pages 290-
98 reveals that it is Dr. Mintz's examination and medical
assessment which are being discussed at this point in the
decision.  The court finds that it is Exhibit 9F at pages 290-98
of the record which ALJ Bock is discussing here.

The Commissioner has promulgated a Psychiatric Review Technique for evaluating mental impairments. 20 C.F.R. §§ 404.1520a, 416.920a. In evaluating the severity of mental impairments at steps two and three of the sequential evaluation process, the technique provides for rating the degree of functional limitation in each of four broad functional areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. Id. §§ 404.1520a(c) 416.920a(c). After rating the degree of limitation, the Commissioner determines the severity of plaintiff's mental impairment. Id. §§ 404.1520a(d), 416.920a(d).

When the first three areas are rated as "none" or "mild," and the fourth area is rated as "none," the agency will conclude at step two of the sequential evaluation process that plaintiff's mental impairments are not severe "unless the evidence otherwise indicates that there is more than a minimal limitation in [plaintiff's] ability to do basic work activities." Id. §§ 404.1520a(d)(1), 416.920a(d)(1). If the mental impairments are severe, the technique requires an evaluation of whether the impairments meet or equal a listing by comparing the step two findings and the medical evidence with the listing criteria. Id. §§ 404.1520a(d)(2), 416.920a(d)(2). If plaintiff's mental impairments do not meet or equal a listing, the Commissioner will assess plaintiff's RFC. Id. §§ 404.1520a(d)(3), 416.920a(d)(3).

-9-

The Commissioner has also promulgated regulations regarding assessment of RFC.  20 C.F.R. §§ 404.1545-1546, 416.945-946.  In assessing RFC, the Commissioner is to consider a claimant's abilities to meet the demands of work despite his impairment(s).  Id. at §§ 404.1545(a), 416.945(a).  The Commissioner will consider plaintiff's "ability to meet the physical, mental, sensory, and other requirements of work."  Id. §§ 404.1545(a)(4), 416.945(a)(4).

The Commissioner issued SSR 96-8p "[t]o state the Social Security Administration's policies and policy interpretations regarding the assessment of residual functional capacity (RFC) in initial claims for disability benefits."  West's Soc. Sec. Reporting Serv., Rulings 143 (Supp. 2008).  In SSR 96-8p, the Commissioner clarified the difference between evaluating the severity of mental limitations at steps two and three based upon the four broad functional areas identified in the psychiatric review technique and evaluating the ability to meet mental demands of jobs at steps four and five.  Id., at 147.  "The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in" the four functional areas.  Id.  RFC must be expressed in terms of work related function.  Id. at 148.  "Work-related mental activities generally required by competitive, remunerative

work include the abilities to:  understand, carry out, and
remember instructions; use judgment in making work-related
decisions; respond appropriately to supervision, co-workers and
work situations; and deal with changes in a routine work
setting." Id. at 149; see also, 20 C.F.R. §§ 404.1545(c),
416.945(c)("limited ability to carry out certain mental
activities, such as limitations in understanding, remembering,
and carrying out instructions, and in responding appropriately to
supervision, co-workers, and work pressures in a work setting,
may reduce [the] ability to do [work.]").  An ALJ should not
state a mental RFC in terms of the four functional areas, but
should make a function-by-function assessment of each of the
work-related mental activities relevant to the case at hand.

SSR 96-8p also includes narrative discussion requirements
for the RFC assessment.  West's Soc. Sec. Reporting Serv., (Supp.
2008) at 149.  The discussion is to cite specific medical facts
to describe how the evidence supports each conclusion, discuss
how the plaintiff is able to perform sustained work activities,
and describe the maximum amount of each work activity the
plaintiff can perform. Id.  The discussion must include an
explanation how any ambiguities and material inconsistencies in
the evidence were considered and resolved. Id.  The narrative
discussion must include consideration of the credibility of
plaintiff's allegations of symptoms and consideration of medical

-11-

opinions regarding plaintiff's capabilities.  Id. at 149-50; see also SSR 96-6p, West's SSR (Supp. 2008) at 129(opinions of program physicians and psychologists are medical opinions which may not be ignored, and the weight given these opinions must be explained).  If the ALJ's RFC assessment conflicts with a medical source opinion, the ALJ must explain why he did not adopt the opinion.  Id. at 150.

As plaintiff argues, the ALJ acknowledged Dr. Mintz's opinion that plaintiff had "poor" functioning in interacting with supervisors and in dealing with work stresses, and assumed without explanation that the limitations stated in the RFC assessment would accommodate plaintiff's mental impairments. (Pl. Br. 15).  Plaintiff argues there is no medical evidence plaintiff can work eight hours a day, five days a week, that the ALJ substituted his lay opinion for Dr. King's opinion, and gave no explanation for the weight given Dr. King's opinion.  Id., 15-16.  Finally, plaintiff claims that the ALJ failed to include the functional limitations resulting from plaintiff's mental impairments in the RFC assessed.  (Pl. Br. 17).  Although plaintiff's argument is by no means clear or direct, the court understands plaintiff's argument to be that the ALJ did not apply the correct legal standard to his RFC assessment, did not resolve ambiguities in the evidence, did not explain the weight given the medical opinions, and did not describe how the evidence supports

the RFC assessment.  The Commissioner did not address all of
plaintiff's allegations, but argued that the ALJ properly
considered Dr. Mintz's opinions and incorporated them into the
RFC assessed.  (Comm'r Br. 7).  He argued that the ALJ's
assessment is supported by substantial evidence.  Id.

     As noted above, the ALJ summarized the findings of Dr.
Mintz's mental status examination and medical assessment, and
also summarized Dr. King's opinion that plaintiff's mental
impairments are not severe.  (R. 23).  He then stated his mental
RFC conclusion that plaintiff can perform simple, repetitive,
unskilled work tasks, with no contact with the public, occasional
contact with co-workers and supervisors, and with moderate social
dysfunction and moderate deficiencies of concentration,
persistence, or pace.  Id.  However, as plaintiff's brief
suggests, there is no discussion or explanation how the ALJ
reached the RFC assessed from the facts summarized.

     First, the ALJ acknowledged Dr. Mintz's opinion that
plaintiff has poor judgment, limited insight, sense of
entitlement and dependency, difficulty interacting well with co-
workers and supervisors, antisocial personality features, limited
positive internalized work attitudes, lack of patterns of
positive behaviors, long history of incarceration and
institutionalization, anger and impulsivity, poor mental
functioning with regard to interacting with supervisors and

dealing with work stresses.  (R. 22-23).  He also noted Dr.
Mintz's opinion that plaintiff is able to understand simple and
intermediate instructions and has an intact ability to
concentrate and that all other areas in the medical assessment
were found to be "good" or "fair."  Id.  He did not explain the
weight given to Dr. Mintz's opinions.  He did not explain how he
resolved the ambiguities between the positive and negative
factors.  He did not explain how the negative evidentiary factors
would be accommodated by restriction to simple, repetitive,
unskilled tasks, only occasional contact with co-workers and
supervisors, and no work with the public.  As plaintiff suggests,
the ALJ apparently assumed the RFC assessed would accommodate the
findings of restrictions made by Dr. Mintz.

        Second, the ALJ acknowledged the state agency psychologist's
(Dr. King's) opinion that plaintiff has no severe mental
impairments.  (R. 23)(citing Ex. 4F (R. 260-73)).  However,
contrary to that opinion the ALJ found that plaintiff has severe
mental impairments including depression and antisocial
personality disorder.  (R. 21).  Again, the ALJ did not explain
the weight given Dr. King's opinion.  He did not explain why he
did not accept the opinion.  In fact, the decision might be read
to imply that the ALJ looked favorably on Dr. King's opinion.
The ALJ did not explain his resolution of the ambiguity between
Dr. King's opinion and Dr. Mintz's opinion.  He did not explain

how he arrived at the RFC assessed or how the evidence supports that RFC.

Plaintiff's argument that "there is no medical evidence that supports the ALJ's finding that Sawyer would be able to sustain an 8 hour day five days a week" (Pl. Br. 15), is not entirely correct, because Dr. King opined that plaintiff has no severe mental impairments (R. 272), the single decision maker, Rick L. Smith, opined that plaintiff has no severe physical impairments (R. 279), and the initial determination was that plaintiff is not disabled because there is no evidence of a severe impairment. (R. 26).  This is medical evidence that plaintiff can work full-time.  However, the ALJ found that plaintiff has a severe combination of mental impairments and physical impairments, thus at least partially rejecting the opinions of the state agency medical sources.  (R. 21).  Moreover, the ALJ did not cite specific medical facts to describe how the evidence supports each RFC conclusion, discuss how the plaintiff is able to perform sustained work activities, and describe the maximum amount of each work activity the plaintiff can perform.

While the Commissioner points to certain evidence in the record, and argues that the evidence cited supports the ALJ's RFC assessment, the ALJ did not rely upon that evidence or the arguments presented in the Commissioner's brief.  The court may not rely upon appellate counsel's post hoc rationalizations for

agency action.  Knipe v. Heckler, 755 F.2d 141, 149 n.16 (10th Cir. 1985).  It may not create post-hoc rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the decision.  Grogan v. Barnhart, 399 F.3d 1257, 1263 (10th Cir. 2005).  An ALJ's decision should be evaluated based solely on the reasons stated therein. Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004).

Here, the court is unable to follow the analysis whereby the ALJ reached his RFC assessment.  All of the analysis was in the ALJ's mind, making the assessment unreviewable by the court.  In such a case, the court must remand for the Commissioner to explain how the assessment was made.  Mosher v. Astrue, 479 F. Supp. 2d 1196, 1205 (D. Kan. 2007)("the ALJ 'did not connect the dots, so to speak,' between the evidence he summarized and the conclusion he reached.")(quoting Kency v. Barnhart, No. 03-1190-MLB, slip op. at 7 (D. Kan. Nov. 16, 2004)).

Because the court recommends remand for a proper assessment of plaintiff's RFC, it would be premature at this time to consider the propriety of the hypothetical question presented to the vocational expert.

**IT IS THEREFORE RECOMMENDED** that the decision be REVERSED and that judgment be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for further proceedings in accordance with this opinion.

-16-

Copies of this recommendation and report shall be delivered to counsel of record for the parties. Pursuant to 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b), and D. Kan. Rule 72.1.4, the parties may serve and file written objections to this recommendation within ten days after being served with a copy. Failure to timely file objections with the court will be deemed a waiver of appellate review. <u>Morales-Fernandez v. INS</u>, 418 F.3d 1116, 1119 (10th Cir. 2005).

Dated this 18th day of February 2009, at Wichita, Kansas.


                                    s/Donald W. Bostwick
                                    **DONALD W. BOSTWICK**
                                    **United States Magistrate Judge**